**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **HERMAN MAJORS,** | ) | |
| | ) | |
| **Movant,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:15-cv-0799** |
| | ) | **Judge Aleta A. Trauger** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## MEMORANDUM

Movant Herman Majors, a prisoner in federal custody, brings this action pursuant to 28 U.S.C. § 2255 to set aside, vacate and correct an allegedly illegal sentence and Judgment imposed by the Honorable Senior Judge John T. Nixon of this court. *See United States v. Patterson et al.*, No. 3:09-cr-00047 (M.D. Tenn. June 25, 2011) (Judgment, Doc. No. 300). (References to the criminal case record will hereafter be designated as "Crim. Doc. No. __.") For the reasons set forth herein, the court finds that an evidentiary hearing is not required and that the movant is not entitled to relief.

## I.      PROCEDURAL BACKGROUND

In February 2009, Majors and others were charged in an Indictment filed in this court with conspiring to possess with intent to distribute five or more kilograms of cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1). (Crim. Doc. No. 9.) A Superseding Indictment was issued in September 2011, adding four additional counts against other defendants but not changing the substance of the charge against Majors. (Crim. Doc. No. 192.)

Majors was represented by appointed counsel, Jordon D. Mathies, throughout the pretrial

and trial proceedings and on appeal.[1] The two-week jury trial on Count One of the Superseding Indictment proceeded against Majors and one of his co-conspirators in February 2012. Judge Nixon presided at the trial.

The jury returned a guilty verdict, and the court later sentenced Majors to 360 months of incarceration—the bottom of the Sentencing Guidelines range. The conviction and sentence were affirmed on direct review. *United States v. Patterson*, 587 F. App'x 878 (6th Cir. 2014), *cert. denied*, *Majors v. United States*, 135 S. Ct. 1273 (March 30, 2015).

Majors filed his original Motion to Vacate in this court on July 20, 2015. (Doc. No. 1.) The matter was originally assigned to Judge Nixon, who appointed counsel. Appointed counsel filed an Amended Motion to Vacate on January 8, 2016. Thereafter, Judge Nixon recused himself, and the matter was reassigned to the undersigned.

## II.    FACTUAL BACKGROUND

The Sixth Circuit summarized the procedural history and the evidence presented at trial, in relevant part, as follows:

> Between 2004 and 2006, defendants [Adrian] Patterson and Majors participated in a drug trafficking conspiracy involving the possession and distribution of more than 150 kilograms of cocaine. Patterson purchased cocaine from dealers in Los Angeles, and arranged for it to be transported to Tennessee. Majors and other individuals traveled to and from Los Angeles with cash and drugs hidden in vehicles.
>
> The conspiracy came to light over a period of years. In late 2004, while driving to Los Angeles, Majors and Cleo Patterson (a relative of Adrian Patterson's) were stopped for a traffic violation, and a search revealed 26 kilograms of cocaine in a hidden compartment of the vehicle. Both men were arrested. [The Oklahoma Indictment against Majors was dismissed without prejudice, but Cleo Patterson

---

[1]  The court takes judicial notice that Jordon Mathies died on April 22, 2016. *See* https://law.vanderbilt.edu/alumni/class-notes/1989.php (last visited Dec. 14, 2016); http://obits.dignitymemorial.com/dignity-memorial/obituary.aspx?n=Jordon-Mathies&lc=4868&pid=179982813&mid=6929508 (last visited Dec. 14, 2016).

was tried, convicted, and sentenced to 360 months.] In 2006, agents of the Drug Enforcement Administration in Los Angeles and Nashville began collaborating on an investigation of a multi-kilogram cocaine transaction that was to take place in Tennessee. The Los Angeles agents had learned from a wiretap that a cocaine supplier would be traveling from Los Angeles to meet a buyer in Clarksville, Tennessee. The Nashville agents identified Adrian Patterson as buyer. With the participation of officers from the Clarksville Police Department, the agents established surveillance of the expected meeting site, which was located at 2211 Ladd Drive.

Soon thereafter, Tim Anderson of the Clarksville Police Department sought and obtained a warrant to search for evidence of drug trafficking at Ladd Drive. The warrant was executed the same day, and Adrian Patterson was among those present during the search. Officers seized over $300,000 in cash, along with approximately one kilogram of cocaine. Also seized was a Ford F–150 that had been used to transport Herman Majors and Cleo Patterson from Los Angeles to Tennessee in 2004.

Two months later, agents executed a search warrant in Clarksville at Patterson's alleged residence, 1869 West Court. Patterson was the only person in the home when the warrant was executed. Among the items seized was a Ford Expedition used to transport drug proceeds.

In 2009, the federal government charged Patterson and Majors with conspiracy. The government subsequently filed a five-count superseding indictment that included the conspiracy count (Count 1), along with four additional charges against Patterson for other crimes (Counts 2–5). To avoid prejudice at trial, the district court severed Count 1 from Counts 2–5.

. . . .

In their proposed instructions to the jury, both Majors and Patterson asked the court to incorporate a statement that a defendant's "mere presence" could not support a finding of guilt on the conspiracy charge. The district court denied the request, but ultimately instructed the jury that "proof that a Defendant simply knew about a conspiracy, or was present at times . . . is not enough, even if he approved of what was happening or did not object to it."

*Patterson*, 587 F. App'x at 880–81.

## III.     THE MOTION AND AMENDED MOTION

In his original *pro se* motion (Doc. No. 1), Majors asserts seven grounds for relief, which

the court construes as follows:

Ground 1: The government violated Rules 3 and 4(a) of the Federal Rules of Criminal

Procedure by failing to present an affidavit of complaint to the federal grand jury or a magistrate judge, and it was stipulated by the Assistant United States Attorney that Majors was not present at the "crime scene," 2211 Ladd Drive in Clarksville, Tennessee, when law enforcement officers executed a search warrant at that address.

Ground 2: The DEA Case Agent failed to tell the grand jury that the 2002 Mitsubishi Montero owned by Majors did not have a hidden compartment built into it.

Ground 3: Majors was never found to be present at 1869 West Court in Clarksville, Tennessee, the other "crime scene" identified in this case.

Ground 4: Government witness and co-conspirator Cleo Patterson lied on the stand during trial and to law enforcement officers regarding the ownership of the vehicle he and Majors were driving when they were stopped in Oklahoma for speeding in 2004 and officers discovered 26 kilograms of cocaine in a hidden compartment.

Ground 5: The Assistant United States Attorney committed prosecutorial misconduct by bringing into evidence the previously dismissed Oklahoma Indictment against Majors.

Ground 6: Majors' sentence is unduly harsh and excessive.

Ground 7: The United States lacked probable cause to charge and arrest Majors for conspiracy to distribute five kilograms or more of cocaine.

The Amended Motion filed by counsel expressly adopts and incorporates the seven grounds for relief set forth in the *pro se* Motion. The Amended Motion also asserts fourteen additional grounds for relief, all premised upon the ineffective assistance of counsel at trial and on appeal, as follows:

Ground 8: Trial counsel failed to understand that a defendant may be convicted at trial in federal court based upon uncorroborated testimony of an alleged accomplice, as a consequence

of which he provided Majors with faulty advice concerning his options for resolving this case and offered no viable defense at trial.

Ground 9: Counsel failed to maintain reasonable contact with his client, thereby denying Majors adequate legal consultation regarding his case during both the trial and the appeal.

Ground 10: Counsel failed to request a legally sufficient jury instruction regarding the defense of "mere presence."

Ground 11: Counsel failed to request a jury instruction describing the Defense Theory.

Ground 12: Counsel failed to present a coherent closing argument.

Ground 13: Counsel failed to present factually supportable objections during sentencing proceedings regarding the calculation of the quantity of cocaine attributable to Majors; consequently, Majors' sentence was based on the quantity of 150 kilograms or more of cocaine instead of on "at least 50 but less than 150 kilograms," or "at least 15 but less than 50 kilograms."

Ground 14: Counsel failed to present a legally cognizable argument for a mitigating role reduction in sentencing.

Ground 15: Counsel did not fully understand the Sentencing Guidelines applicable to a mitigating role reduction under U.S.S.G. § 3B1.2, as a result of which he erroneously argued for a role reduction based on the absence of factors applicable to an aggravating role enhancement under U.S.S.G. § 3B1.1.

Ground 16: Counsel failed to support with citations to the evidentiary record his objections to the allegations in the PSR that Majors had recruited Cleo Patterson and had multiple vehicles titled in his name.

Ground 17: Counsel was ineffective at sentencing insofar as he failed to request that

Majors' sentence be reduced by 3 months for the period of time he was in pretrial detention in Oklahoma and failed to request that Majors' 30-year sentence be served concurrently with an existing 10-year sentence.

Ground 18: Counsel was ineffective in his handling of a Motion to Dismiss based on an alleged violation of the double jeopardy clause of the Fifth Amendment to the United States Constitution.

Ground 19: Counsel was ineffective in his handling of the Motion to Suppress Evidence under the Fourth, Fifth, Sixth, and Fourteenth Amendments.

Ground 20: Counsel filed an inadequate appellate brief, failed to file a corrected brief when directed to do so by the Sixth Circuit, and failed to attend oral argument.

Ground 21: Counsel abandoned Majors after the issuance of the Sixth Circuit opinion affirming the judgment and conviction by failing to file a Petition for the Writ of Certiorari in the United States Supreme Court.

## IV. STANDARD OF REVIEW

To be entitled to relief, a prisoner who moves to vacate his sentence under § 2255 must show that the sentence was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such sentence, that the sentence was in excess of the maximum authorized by law, or that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. To prevail on a § 2255 motion, a movant "must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)). Non-constitutional errors are generally outside the scope of § 2255 relief. *United States v. Cofield*, 233 F.3d 405,

407 (6th Cir. 2000). A movant can prevail on a § 2255 motion alleging non-constitutional error only by establishing a "fundamental defect which inherently results in a complete miscarriage of justice, or an error so egregious that it amounts to a violation of due process." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (internal quotation marks and additional citation omitted)).

A § 2255 motion is not a substitute for a direct appeal. Consequently, as a general rule, any claims not raised on direct appeal are procedurally defaulted and may not be raised on collateral review unless the movant shows "(1) 'cause' excusing [the] procedural default, and (2) 'actual prejudice' resulting from the errors," *United States v. Frady*, 456 U.S. 152, 168 (1982) (citations omitted), or demonstrates that he is "actually innocent." *Bousley v. United States*, 523 U.S. 614, 622 (1998) (citations omitted). A claim of ineffective assistance of counsel is not subject to the procedural-default rule. *Massaro v. United States*, 538 U.S. 500, 504 (2003). An ineffective-assistance claim may be raised in a collateral proceeding under § 2255 regardless of whether the movant could have raised the claim on direct appeal. *Id.*

## V.      DISCUSSION

### A.      Whether a Hearing Is Required

A prisoner who files a motion under § 2255 challenging a federal conviction is generally entitled to "a prompt hearing," at which the district court is to "determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255. The hearing is mandatory, "unless 'the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *Fontaine v. United States*, 411 U.S. 213, 215 (1973) (quoting 28 U.S.C. § 2255(b)). "If the record includes a factual dispute, the district court must hold a hearing to determine the truth of the [movant's] claims." *Ross v. United States*, 339 F.3d 483,

490 (6th Cir. 2003) (quotation marks and citation omitted). However, "no hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)).

Upon consideration of the original and amended motions, the government's response and the underlying record, the court finds that there are no evidentiary issues to be resolved and that the record "conclusively show[s] that the prisoner is entitled to no relief," 28 U.S.C. § 2255(b). A hearing is therefore not required.

**B.        Issues Raised in Original Motion**

As set forth above, claims not raised on direct appeal are procedurally defaulted and unreviewable in the context of a § 2255 proceeding unless the movant establishes "cause" for the default and "actual prejudice" resulting from the errors, *United States v. Frady*, 456 U.S. at 168, or demonstrates actual innocence. *Bousley*, 523 U.S. at 622 (1998) (citations omitted). Moreover, grounds that actually were raised on direct appeal may not be relitigated in a collateral proceeding. *Jones v. United States*, 178 F.3d 790,796 (6th Cir. 1999).

Each of the seven grounds for relief raised in the *pro se* motion either actually was or could have been raised on direct appeal. Majors has not established cause and prejudice resulting from the default or demonstrated actual innocence to overcome the procedural default of those issues not raised on direct appeal, and he has not provided any basis for reconsideration of those issues that were thoroughly litigated. Majors is not entitled to relief on the basis of Grounds 1 through 7.

**C.      Claims Raised by Counsel**

The grounds for relief raised in the Amended Motion filed by counsel on behalf of Majors are premised on the ineffective assistance of counsel. To be entitled to relief under § 2255 based on a claim of ineffective assistance of counsel, the movant must establish "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In judging an attorney's conduct, the court must consider all of the circumstances and facts of the particular case, *id.* at 690, and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Prejudice requires a showing that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A defendant has the burden of making both showings; otherwise, "it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

**1.      Ground 8**

Majors argues that his criminal defense attorney's performance was constitutionally deficient insofar as he failed to understand that a defendant can be convicted based on the uncorroborated testimony of an alleged accomplice. As a result of this error, Majors argues, the attorney provided Majors with faulty advice concerning his options for resolving this case and offered no viable defense at trial.

This claim is premised upon Majors' attorney's argument, in his appellate brief to the Sixth Circuit Court of Appeals, that Majors' sentence and conviction were supported by insufficient evidence, because "statements of the government's cooperating witnesses were not

corroborated by independent evidence thereby rendering the statements an improper basis for proof beyond a reasonable doubt." Brief of Appellant at 34, *United States v. Majors*, No. 12-5726 (6th Cir. Aug. 2, 2013), Doc. No. 58. Majors asserts now that his attorney misstated the "corroboration rule," which actually provides that "no one may be convicted of a crime based solely on his uncorroborated confession." *United States v. Brown*, 617 F.3d 857, 860 (6th Cir. 2010). Majors does not argue that he was prejudiced by his counsel's making a legally erroneous argument on appeal. Rather, he appears to argue that he was prejudiced by his counsel's lack of understanding of the legal issues affecting his case, as demonstrated by his presentation of an argument that, Majors contends, was clearly not supported by the law.

The court does not find that the argument was legally unsupported or so lacking in merit that it shows that counsel misunderstood the nature of the case against his client. Rather, the focus of the argument was that the evidence was insufficient to support the verdict, because the testimony of Cleo Patterson and other co-conspirators, all self-interested informants, was inherently untrustworthy and not corroborated by other evidence. The gist of his argument was that the government had not carried its burden of proving the defendant's guilt beyond a reasonable doubt. The jury rejected that argument and the Sixth Circuit affirmed, finding that the conviction was supported by sufficient evidence. [2] That does not mean that counsel's strategy was constitutionally ineffective.

Moreover, even assuming that the argument was unsupported as a matter of law, Majors has not shown that he was actually prejudiced by any purported error by counsel. Majors does

---

[2] The Sixth Circuit, indeed, rejected Majors' corroboration argument on direct appeal. *See United States v. Patterson*, 587 F. App'x 878, 892 (6th Cir. 2014) ("Majors' argument is misplaced because the 'corroboration rule' to which he refers stands only for the proposition that a defendant may not be convicted of a crime based solely on his uncorroborated confession. It does not require corroboration of others' testimony." (citing *Brown*, 617 F.3d at 860)). The court, however, treated the argument as asserting that the evidence was insufficient to support the verdict. *See id.* ("Ample evidence supports Majors' conviction.").

not assert, for instance, that he would have been more likely to consider a plea if he had known that the uncorroborated-testimony argument would be fruitless or that, if counsel had argued the issue differently or offered additional legal support, the outcome of the appeal would have been different.

Majors has not shown that he was prejudiced by his attorney's error, and he is not entitled to relief on the basis of this claim.

### 2.      *Ground 9*

Majors argues that his trial attorney "failed to maintain reasonable contact with Mr. Majors, thereby denying Mr. Majors adequate legal consultation regarding his case during both the trial and appellate process." (Doc. No. 18, at 4.) Majors asserts, in wholly conclusory fashion, that his attorney's failure to communicate with him denied him "the benefit of legal advice he could trust as being accurate or in his best interests" and that the meetings he did have with counsel "were of such poor quality that Mr. Majors did not fully understand the government's evidence against him and could not make a knowing decision as to how to resolve this matter." (*Id.*)

The criminal docket is replete with letters from Majors to the docket clerk requesting information about his case and complaining about his inability to communicate with his attorney. Attached to Majors' reply brief are copies of dozens of letters dating from April 2011 through September 2015 from Majors to his trial attorney, to the clerks of this court and the Sixth Circuit Court of Appeals, and to the Tennessee Board of Professional Responsibility, all complaining about the attorney's lack of responsiveness to his client's requests for information and assistance. (*See* Doc. No. 40-1.)

While an attorney's failure to communicate a plea offer has been held to constitute

ineffective assistance, *Guerrero v. United States*, 383 F.3d 409, 416 (6th Cir. 2004), this court is unaware of any case holding that an attorney's general unresponsiveness constitutes *per se* ineffective assistance of counsel. Majors never wrote to the trial judge or filed a motion requesting that a different attorney be appointed to represent him. He has not presented any evidence suggesting that counsel failed to keep him informed of significant developments in the case or that he would have pleaded guilty if he had known about some particular facet of his case that was not communicated to him. In sum, even assuming that counsel was deficient in his communications with Majors, Majors has not established prejudice. He is not entitled to relief on the basis of this claim.

### 3.   *Ground 10*

Majors argues that his counsel was ineffective because he failed to request a "legally sufficient" jury instruction regarding the defense of "mere presence." (Doc. No. 18, at 4–5.) He argues that the instruction the attorney requested so misstated the law that the court had no choice but to reject it, causing him prejudice.

Counsel requested the following jury instruction addressing "mere presence":

> The mere presence of the defendant [ ] at the scene of commission of a crime is not. [sic] standing alone sufficient evidence for direct or circumstantial proof of guilt or involvement of the defendant [ ] in the commission of the crime. Such evidence cannot support a finding of criminal guilt.

(Crim. Doc. No. 258, at 2 (citing *United States v. Spiva*, No. 95-5530, 1996 U.S. App. LEXIS 24014 (6th Cir. April 4, 1996).)

The Sixth Circuit addressed on appeal Majors' claim that the trial court had abused its discretion in denying his request for this instruction. The Sixth Circuit rejected the claim, finding that (1) the proposed instruction was not a substantially correct statement of the law; (2) portions of it were covered by other instructions; and (3) the failure to give the instruction did not impair

Majors' theory of the case. *United States v. Patterson*, 587 F. App'x 878, 888 (6th Cir. 2014). As

the Sixth Circuit stated, while "mere presence alone is not enough to prove a defendant's guilt, . .

. presence is a material and probative factor which the jury may consider in reaching its

decision." *Id.* (quoting *United States v. Christian*, 786 F.2d 203, 211 (6th Cir. 1986)). In other

words, Majors is correct that the proposed instruction was legally erroneous or, at best,

incomplete. Counsel's conduct was arguably unreasonable insofar as he failed to provide a

complete and legal cogent instruction on "mere presence."

Majors has not shown, however, that he was prejudiced thereby, because, as the Sixth

Circuit noted, the instructions given by Judge Nixon substantially incorporated a correct "mere

presence" instruction:

> But *proof that a Defendant* simply knew about a conspiracy, or *was present at
> times* or associated with members of the group, *is not enough [to prove the
> Defendant joined the conspiracy*], even if he approved of what was happening or
> did not object to it. Similarly, just because a Defendant may have done something
> that happened to help a conspiracy does not necessarily make him a conspirator.
> T*hese are all things that you may consider in deciding whether the Government
> has proved that the Defendants joined a conspiracy. But without more, they are
> not enough.*

(Crim. Doc. No. 339, Trial Tr. Vol. XI, at 28 (emphasis added).) Under this instruction, Majors

was able to argue that he had only innocent and coincidental associations with other members of

the conspiracy.

Majors is not entitled to relief on the basis of this claim.

### 4. *Ground 11*

Majors also argues that his trial attorney was constitutionally deficient because he failed

to request a jury instruction describing the Defense Theory, particularly in light of the court's

rejection of his proposed "mere presence" instruction. He suggests that the defense theory was

that he could not be a knowing or willful participant in the conspiracy if he lacked knowledge

that he was transporting contraband and insists that this theory was not adequately spelled out for the jury. (Doc. No. 18, at 7.) He relies on the underlying record as a whole in support of his claim that counsel never requested such an instruction, and he asserts as a matter of law that "a defendant is entitled to an instruction regarding his theory of the case whenever the theory has some support in the facts and the law." (Doc. No. 18, at 6 (citing *United States v. Duncan*, 850 F.2d 1104, 1117 (6th Cir. 1988), *overruled on other grounds by Schad v. Arizona*, 501 U.S. 624 (1991)).)

The Sixth Circuit has held that a trial court errs in rejecting a proposed jury instruction where the denial "usurp[s] the function of the jury by depriving [the defendant] of his opportunity to present his theory of the defense." *Duncan*, 850 F.2d at 1117. As the *Duncan* court stated, "when a theory of defense finds some support in the evidence and in the law, a defendant is entitled to some mention of that theory in the instructions." *Id.* (quoting *United States v. Garner*, 529 F.2d 962, 971 (6th Cir. 1976)). Both *Duncan* and *Garner*, however, were rendered in the context of a direct appeal in which the appellant argued that the trial court had erred in rejecting a specifically requested instruction. Trial counsel here did not specifically request a "theory of the case" instruction, and this court is not aware of any authority supporting the proposition that failure to request such an instruction amounts to *per se* ineffective assistance. Moreover, the instruction the court did give on presence and participation in a conspiracy, quoted in full above, is entirely consistent with Majors' theory of the defense, as the Sixth Circuit held. And defense counsel was able to—and did—argue in closing that Majors was not a knowing participant in the drug conspiracy. The jury obviously rejected that argument.

Majors has not established that counsel's conduct was constitutionally ineffective or that he was prejudiced by the purported error.

##### 5. *Ground 12*

Majors argues that his trial attorney failed to present a coherent closing argument and that an "effective" attorney would have focused his closing argument "on evidence supporting the mere presence defense." (Doc. No. 18, at 7.) He also characterizes the attorney's argument as consistent with his "mistaken belief that the uncorroborated testimony of an accomplice is insufficient evidence for conviction." (*Id.*)

This argument is closely related to those set forth in Grounds 10 and 11, and it fails for largely the same reasons. Counsel, in fact, argued cogently in closing that the testimony of Cleo Patterson and other government witnesses was inherently unbelievable and that the jury should view these witnesses' self-serving statements with skepticism. He also pointed out that his client was not implicated by any of the wiretaps, that he was not found at either of the properties that were the target of search warrants, and that he was never under surveillance. Majors' insistence that counsel did not adequately emphasize the "mere presence" defense amounts simply to a disagreement over trial strategy, which is not grounds for a claim of ineffective assistance of counsel. *See Strickland*, 466 U.S. at 689 ("Because of the difficulties inherent in making the evaluation [of counsel's conduct], a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (quotation marks and citation omitted)).

Majors has not established that counsel's strategy was unreasonable or that he was prejudiced by the failure to adopt a different strategy.

##### 6. *Ground 13*

Majors contends that his attorney failed to present "factually supportable objections in the

sentencing proceedings regarding the calculation of the quantity of cocaine attributable to Majors," as a result of which, Majors' sentence was based on the quantity of 150 kilograms or more of cocaine instead of on "at least 50 but less than 150 kilograms," or "at least 15 but less than 50 kilograms." (Doc. No. 18, at 8.)

The gist of Majors' argument is that his attorney should have provided reasonable arguments in support of his claim that he should not be sentenced based on a drug quantity of at least 150 kilograms. He argues that he was prejudiced by this failure, because, if his attorney had explained to the judge why he should be credited with less, his Base Offense Level would have been either 36 (for 50 to 150 kilograms) or 34 (for 15 to 50 kilograms), and the resulting Sentencing Guidelines range would have been either 324 to 400 months or 262 to 327 months of imprisonment, instead of the 360 months to life yielded by a Base Offense Level of 38.[3]

Majors posits two alternative arguments that his attorney could have made. The first is that he should have argued that Majors' involvement in the conspiracy ended when he was arrested in Oklahoma in December 31, 2004. If this argument had been made, he contends, the attorney could have argued credibly to the court that he should not be held responsible for any amount of cocaine that was trafficked after that date. Even crediting the testimony of Cleo Patterson and Bassim Fardos, Majors argues, the testimony showed that he traveled to California no more than five times and was only involved with the transport of substantially less than 150 kilograms of cocaine. Second, he argues that, because the Government argued that the conspiracy involved 150 kilograms of cocaine over a three-year period, and Majors was only involved during the first year, he should only be charged with involvement in one-third of the

---

[3] The Guideline range for 15 to 50 kilograms of cocaine has subsequently been reduced to Level 32. Given a Criminal History Category of VI, the range would now be 210 to 262 months of imprisonment.

150 kilograms, or 50 kilograms, for purposes of sentencing.

The court finds that, even assuming that counsel's performance in failing to challenge the amount of drugs attributed to Majors was deficient, Majors cannot establish prejudice. The law is clear that, for sentencing purposes, "[w]here a defendant is part of a 'jointly undertaken criminal activity' involving drugs, 'the defendant is accountable for all quantities of contraband with which [he] was directly involved and . . . all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that [he] jointly undertook.'" *United States v. Begley*, 602 F. App'x 622, 626 (6th Cir. 2015) (quoting U.S.S.G. § 1B1.3 cmt. 2[4]). A "jointly undertaken criminal activity" includes a conspiracy. *United States v. Watson*, 620 F. App'x 493, 513 (6th Cir. 2015); U.S.S.G. § 1B1.3 cmt. 3 (2016).

Here, the proof was that Majors himself was directly involved in the transport of hundreds of thousands of dollars of cash from Tennessee to California and dozens of kilograms of cocaine from California to Tennessee. Bassim Fardos testified that the conspiracy organized by him and Adrian Patterson involved, during 2004, four different vehicles that Fardos had modified by having built into them special hidden compartments to carry cash and drugs: a Ford F–150, a Mitsubishi Montero, a Volkswagen Eurovan, and a Ford Expedition. (Crim. Doc. No. 328, Trial Tr. Vol. V, at 14.) According to Fardos, the Expedition was used two or three times; it carried from $100,000 to $300,000 in cash from Tennessee to California each time and returned to Tennessee carrying 8 to 10 kilos of cocaine each time. (*Id.* at 25, 40.) The Montero, which was titled in Herman Majors' name, was used only once before it was stolen, and it carried approximately $275,000 in cash intended to purchase approximately 20 kilos of cocaine. (*See id.*

---

[4] The Application Notes were amended in 2016. The language previously found at Note 2 is now in Note 3.

at 37 (estimating bulk price of cocaine at that time).)[5] The Ford F–150 carried approximately 20 kilos each trip and was used two or three times. The Volkswagen Eurovan held 26 kilos and was used twice for transport. Majors was implicated as the driver on at least three and as many as five of these trips.

In 2005, after the Eurovan and its 26 kilograms of cocaine were seized in Oklahoma, the conspiracy began employing tractor-trailers to transport the drugs. This method was used twice, carrying 25 to 35 kilos on each run. Although Majors was not alleged to have been directly involved in the conspiracy at that point, the quantities involved after December 2004 were consistent with the quantities involved prior to that date and thus were reasonably foreseeable. The figures from 2004 and 2005 add up, based on this court's calculations, to at least 178 kilograms of cocaine, all of which were reasonably attributable to Majors as a knowing and willing participant in the conspiracy.[6]

The court finds it somewhat troubling that neither the United States nor the Probation Office ever spelled out precisely how they reached the figure of "more than 150 kilograms" of cocaine. (*See* Crim. Doc. No. 310, at 6.) The trial attorney, while he did attempt to argue that Majors should only be sentenced based on the 26 kilograms confiscated in Oklahoma, did not raise a specific objection based on the computation of 150 kilograms, and the trial judge did not articulate how he reached that figure or the basis for attributing all of it to Majors for sentencing purposes. Notwithstanding, the judge had heard all the testimony and is presumed to be

---

[5] The Montero was stolen from Fardos at gunpoint while it was loaded with cash, so Majors did not return it to Tennessee loaded with $275,000-worth of cocaine that was meant to replace the cash in the hidden compartment. But the conspiracy encompassed an intent to transport that amount of cocaine to Tennessee.

[6] Majors does not attempt to argue that he withdrew from the conspiracy or that his attorney should have raised a withdrawal defense.

knowledgeable of the applicable law. This court therefore finds that any objection based on the drug quantity that might have been raised by trial counsel would have been futile. The sentence based on Majors' involvement in a conspiracy to distribute more than 150 kilograms of cocaine was supported by the evidence, and the judge would not have been likely to depart from the recommendation in the Presentence Investigation Report, regardless of what additional arguments defense counsel might have raised.

The court will deny relief on this claim on the basis that Majors has failed to establish prejudice. The court will, however, grant a Certificate of Appealability on this issue.

## 7.       *Grounds 14 and 15*

In Ground 14, the movant argues that trial counsel "failed to understand and failed to present a legally cognizable argument for a mitigating role reduction in the sentence." (Doc. No. 18, at 10.) In Ground 15, he argues, similarly, that counsel "failed to understand the Sentencing Guidelines applicable to a mitigating role reduction under U.S.S.G. § 3B1.2. (Doc. No. 18, at 11.)

Majors acknowledges that his attorney asked for a sentence reduction based on Majors' minor role in the offense but argues that he erred in suggesting that such a finding would affect Majors' Criminal History points rather than the Offense Level, reducing the Criminal History Category from VI to V. In addition, although he referred to a mitigating role adjustment, he made an argument based on the law pertaining to the imposition of an upward adjustment for playing a leadership role. (*See* Crim. Doc. No. 294, at 28.)

The court agrees that the Sentencing Memorandum is somewhat confusing and that defense counsel's argument at the sentencing hearing, presumably attempting to show that his client was entitled to a sentencing reduction based on his mitigating role in the conspiracy, was

largely incoherent. Like the Sentencing Memorandum, it confused the law concerning an enhancement for a leadership role and a reduction based on a minor or mitigating role. Counsel stated:

> So I think, your Honor, that the proof under the – first off, under the mitigating role test for the Sixth Circuit shows that if you don't have aggravating factors, then the absence of those aggravating factors is a consideration for the Court and sentencing or finding or determining that the Defendant's range is within a role of minor or minimal leadership. And the leadership is the disqualifier for the points in a range of 4 to 2 levels – of 2 to 4 points for that adjustment.

(Crim. Doc. No. 342, at 65–66.) Nonetheless, although he could have framed the argument more cogently, the attorney did argue that Majors was a minor or minimal participant in the conspiracy and that, as such, he was entitled to a reduction in his base offense level. (Crim. Doc. No. 294, at 16–17.) More importantly, nothing in the record suggests that the court would have granted an adjustment based on a mitigating role, even if the trial attorney had articulated the argument more clearly.

Section 3B1.2 of the Sentencing Guidelines authorizes a 4-level decrease in the offense level if the defendant is a "minimal participant in any criminal activity" and a 2-level decrease if he was a "minor participant." "[T]he critical question in whether to grant a 'mitigating role' reduction is what role the defendant played in relation to others involved in the criminal enterprise." *United States v. Skinner*, 690 F.3d 772, 783 (6th Cir. 2012) (quoting *Henderson*, 307 F. App'x at 983). The Sixth Circuit has recognized that the role of courier in a drug distribution conspiracy is "critical" to the success of the conspiracy. *Id.*; *see also United States v. Williams*, 505 F. App'x 426, 428 (6th Cir. 2012) ("Defendant's role in the enterprise was not minor or minimal. Defendant repeatedly acted as a courier for Victor Ray Thomas, a Memphis-based dealer of methamphetamine. She carried up to two pounds of methamphetamine, by both plane and bus, on several occasions. Courts in this Circuit have found that a defendant's 'role as

courier was critical to the success of the drug trafficking and money laundering conspiracies.'" (quoting *Skinner*, 690 F.3d at 783)).

Here, the evidence established that Majors made at least three or four trips between Nashville and Los Angeles, carrying hundreds of thousands of dollars in cash or dozens of kilos of cocaine on each leg of the trip. Thus, although the sentencing judge would have had the discretion to entertain a coherent request for a reduction based on a minor or minimal role in the conspiracy, it is highly unlikely that he would have concluded that Majors' role was either minor nor minimal. In addition, the judge did not make a finding that Majors occupied a leadership role in the conspiracy and did not increase the base offense level based on any such finding. Thus, while it is clear that the attorney's performance in attempting to argue for a sentencing reduction left something to be desired, Majors has not shown that he was prejudiced by his attorney's failure to articulate a mitigation argument more clearly.

### 8.     *Ground 16*

Majors argues that his trial attorney was constitutionally ineffective insofar as he failed to support with citations to the evidentiary record his objections to the allegations in the PSR that Majors had recruited Cleo Patterson into the conspiracy and had multiple vehicles titled in his name. Even assuming that counsel was ineffective in this regard, Majors has not shown that he suffered prejudice as a result. His sentence was not enhanced on the basis of a leadership role in the conspiracy. It was clear from the record that there was only one vehicle used in the conspiracy that was titled in his name, and, in any event, there is no evidence either that Majors' sentence was enhanced as a result of an erroneous finding to the contrary by the sentencing judge or that the judge declined to reduce the base offense level based on such a finding.

### 9. *Ground 17*

Majors argues that his defense counsel was ineffective at sentencing because he failed to request that Majors' sentence be reduced by 3 months for the period of time he was in pretrial detention in Oklahoma and failed to request that Majors' 30-year sentence be served concurrently with an existing 10-year sentence.

With regard to the three months spent in detention in Oklahoma, the court notes, first, that the Bureau of Prisons is responsible for computing sentencing credits. *See* 18 U.S.C. § 3585(b)(2). Second, Majors has not actually established that the Bureau of Prisons has *not* credited the period of detention in Oklahoma to his current sentence. And third, Majors has not presented any law suggesting that he would have been entitled to sentence credits for the time he was incarcerated on prior charges in a different jurisdiction, even though the charges were related. Finally, the court did order that the Bureau of Prisons give Majors jail credit for the time he had been incarcerated pending sentencing. (Judgment, Crim. Doc. No. 300, at 2.) Majors has not shown that his attorney was deficient or that he was prejudiced by any alleged deficiency relating to jail credit for the three months spent incarcerated in Oklahoma in 2005.

Regarding his attorney's failure to request that his federal sentence run concurrently with a ten-year state sentence, according to the PSR, Majors was charged with aggravated assault in April 2008. He pleaded no contest to the charge in February 2009 and was sentenced to 10 years, suspended to community corrections. (Crim. Doc. No. 310, at 18.) He was arrested in March 2009 on a community corrections violation warrant. Community corrections was revoked, and his sentence was placed into effect in September 2009, presumably as a result of his arrest on the federal conspiracy charge. That sentence is scheduled to expire in February 2018. (*Id.*)

Even assuming that counsel's performance was deficient, Majors has not established

prejudice in connection with his attorney's failure to request concurrent sentences. First, Majors has not articulated in his Amended Motion in this court what factors under 18 U.S.C. § 3553(a) would have favored imposition of concurrent sentences. See 18 U.S.C. § 3584(b). Moreover, the sentencing judge was presumably aware of the state sentence based on the information in the PSR and aware of his authority to grant concurrent sentences without a request being made by defense counsel. *Cf. Johnson v. United States*, No. 12-15227, 2016 WL 1259354, at *5 (E.D. Mich. March 31, 2016) (denying relief in § 2255 proceeding on the movant's argument that counsel was ineffective for failing to request concurrent sentences, noting that "the Court was well aware of its authority to impose a concurrent sentence . . . and did not need a reminder from the defense counsel about its authority to do so."). Thus, the court finds it highly unlikely that the sentencing judge would have granted such a request, if one had been made.

Majors has not established that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). The court will therefore deny relief on this claim. The court will, however, grant a Certificate of Appealability on this issue.

### *10.      Ground 18*

Majors contends that his trial attorney was ineffective for filing a Motion to Dismiss the Indictment for Violation of the Double Jeopardy Clause of the U.S. Constitution (Crim. Doc. No. 220). The motion was denied based on longstanding federal jurisprudence establishing that double jeopardy does not attach until a jury is sworn and empaneled, and the defendant is "put to trial before the trier of facts.'" *Serfass v. United States*, 420 U.S. 377, 388 (1975) (quoting *United States v. Jorn*, 400 U.S. 470, 479 (1971)). (*See* Order, Crim. Doc. No. 224, at 1–2.) Majors acknowledges that the Motion to Dismiss was clearly unsupported by the law. He argues

that he was prejudiced by its filing because (1) it "demonstrated his [attorney's] fundamental misunderstanding of double jeopardy jurisprudence"; and (2) the filing of an essentially frivolous motion "invited the Court to find that Mr. Majors was deceptive." (Doc. No. 18, at 16.)

While the Motion to Dismiss lacked merit, this court is unaware of any authority suggesting that counsel is constitutionally ineffective for asserting an unsuccessful argument. Nor has Majors shown actual prejudice resulting from the unsuccessful motion. *Accord United States v. Samuels*, No. 08-CV-0677-CVE-FHM, 2009 WL 3756556, at *10 (N.D. Okla. Nov. 6, 2009) ("The Court has not found any authority suggesting that appellate counsel is constitutionally ineffective for asserting unsuccessful arguments on appeal and, even if appellate counsel were ineffective, it is not clear how asserting unsuccessful arguments causes any prejudice to a defendant."). He is not entitled to relief on the basis of this claim.

### 11.     *Ground 19*

Majors argues that his counsel was ineffective in his handling of a Motion to Suppress Evidence under the Fourth, Fifth, Sixth, and Fourteenth Amendments. The gist of this claim is that the motion was patently without merit as a matter of law, and counsel's decision to file the motion reflected his lack of understanding of the Federal Rules of Evidence and prejudiced Majors by "undermining the reliability of every action taken on his behalf." (Doc. No. 18, at 17.) Majors further argues that he was prejudiced when counsel "inexplicably and unnecessarily" called Majors himself to testify at the hearing on the motion. Majors was not prepared to testify and ultimately found it necessary to invoke his Fifth Amendment right not to incriminate himself in order to terminate cross-examination.

Again, counsel is not *per se* ineffective for pursuing a non-meritorious motion, and Majors has not shown actual prejudice resulting either from the filing of the Motion to Suppress

or from calling Majors to testify at the hearing. The jury was not apprised of the matter and Majors' testimony was not used against him.

Majors is not entitled to relief on the basis of this claim.

### 12. Ground 20

Majors argues generally that his counsel was ineffective during the appellate phase of his representation for failing to file a corrected brief when directed to do so by the Sixth Circuit, "failing to attend oral argument" (Doc. No. 18, at 17), and failing to raise substantive issues that might have had merit. "Most strikingly," Majors argues, "the appeal brief fails to challenge the Guideline calculation concerning the drug quantity for which Mr. Majors would be held responsible." (*Id.* at 18.)

The underlying record reflects that Majors' attorney did not actually fail to attend oral argument. Instead, he waived oral argument by failing to file a corrected brief that complied with 6th Circuit Rule 34.[7] Majors, however, does not argue now that counsel was deficient for failing to *request* oral argument or show how he might have been prejudiced by such failure.

---

[7] Counsel left blank the space in his brief below the heading, "Statement Regarding Oral Argument." *See* Brief of Appellant at 9, *United States v. Majors*, No. 12-5726 (6th Cir. Aug. 2, 2013), Doc. No. 58. The Sixth Circuit had previously notified the parties that, pursuant to 6th Circuit Rule 34(a), any party desiring oral argument "must include a statement in the brief setting forth the reason(s) why oral argument should be heard. If the docket entry for your brief indicates that you have requested oral argument but the statement itself is missing, you will be directed to file a corrected brief." Briefing Letter at 2, *Majors*, No. 12-5726 (6th Cir. May 14, 2013), Doc. No. 51. Because counsel omitted the statement from his brief, the Sixth Circuit indeed alerted him to that fact and directed him to file a corrected brief. Briefing Letter (Aug. 6, 2013), Doc. No. 59. After counsel failed to do so, the Sixth Circuit considered the original, uncorrected brief instead. *See* Letter to Counsel (Aug. 26, 2013), Doc. No. 72 ("The 'corrected brief' has not been filed. Therefore, when this appeal is submitted for a decision on the merits, the brief shall be submitted to the court as filed, without correction."). And, according to the court clerk's notation at docket entry no. 58, the court deemed the appellant to have waived oral argument.

As to whether counsel was ineffective for failing to challenge on appeal the computation of the drug quantity attributed to Majors for purposes of sentencing, the court finds that it is unlikely that making this argument would have changed the outcome of the proceedings, for the same reasons as those discussed in connection with Ground 13, above. Because Majors has not established that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *Strickland*, 466 U.S. at 694, he is not entitled to relief. The court will grant a certificate of appealability as to this claim, however.

### 13. *Ground 21*

Finally, Major argues that his counsel was constitutionally ineffective insofar as he abandoned Majors without filing a petition for the writ of certiorari in the United States Supreme Court. This claim, too, is without merit.

First, counsel's failure to petition for certiorari does not amount to ineffective assistance. "As the Supreme Court has made clear, the Constitution does not entitle a criminal defendant to the assistance of counsel for the filing of a petition for certiorari, so counsel's failure to file that petition cannot amount to constitutionally ineffective assistance." *Nichols v. United States*, 563 F.3d 240, 249–50 (6th Cir. 2009) (citations omitted).

Second, Majors cannot show he was prejudiced by the purported failure, because he himself filed a timely petition. This claim is without merit.

## VI. CONCLUSION

For the reasons set forth herein, the court finds that Majors is not entitled to post-conviction relief. The court will, however, grant a certificate of appealability on the grounds that his criminal defense attorney was constitutionally ineffective in that he failed to (1) present factually supportable objections to the Probation Office's calculation of the quantity of cocaine

attributable to Majors for sentencing purposes (Ground 13); (2) request concurrent sentencing (Ground 17); and (3) to challenge the Guideline calculation concerning the drug quantity for which Majors would be held responsible for sentencing purposes (Ground 20).

An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge